**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FLORIAN CHAVEZ, II,

Plaintiff,

vs. No. CIV 07-1250 JB/LFG

CHRIS MARTINEZ,
a New Mexico State Police Officer,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Lt. Chris Martinez' Motion for Summary Judgment, filed July 3, 2008 (Doc. 23)("Motion"). The Court heard a hearing on August 20, 2008. The primary issues are: (i) whether Defendant Chris Martinez violated Plaintiff Florian Chavez, II's Fourth Amendment right to be free from unreasonable search and seizure; and (ii) whether Martinez violated Chavez' Fourteenth Amendment right to privacy. Because the Court concludes that Chavez did not suffer any violations of his constitutional rights, the Court will grant the motion for summary judgment.

**FACTUAL BACKGROUND**

Chavez holds the rank of Sergeant in the New Mexico State Police. See Complaint ¶ 6, at 1, filed December 12, 2007 (Doc. 1). Martinez holds the rank of Lieutenant in the New Mexico State Police. See id. ¶ 7, at 1.

Chavez knew on March 21, 2007 that he needed to have surgery, but he did not tell his supervisor, Lt. Ramon Casaus, until April 26, 2007 that he needed the time off. See Exhibit A to Motion, Deposition of Florian Chavez II at 53: 25-54: 24 (taken June 3, 2008)("Chavez Depo.");

id. at 82: 14-24; Exhibit B to Motion, Plaintiff's Answer to Interrogatory No. 6, at 4; id. Verification, at 9 (dated June 3 2008). Chavez' surgery was scheduled for April 27, 2007, but he had an unexpected illness on April 26, 2007 and did not know that he needed that day off until that day. See Chavez Depo. at 84: 5-15.

On April 26, 2007, Chavez contacted Casaus to inform him that he would not be at work that day and that he needed five days off on sick leave. See Chavez Depo. at 47: 6-8. Casaus requested that Chavez provide him with a "doctor's note" to confirm the need for the time off. See Chavez Depo. at 51: 25-52:2. Although New Mexico Department of Public Safety ("DPS") regulations do not state how far in advance an employee must apply for sick leave, New Mexico State Police procedures allow a supervisor to request verification of any reported illness. See New Mexico State Police Sick Leave Policy at 4 (dated May 4, 2000)(Doc. 24-2).

Casaus subsequently initiated a complaint against Chavez for insubordination and untruthfulness. See Exhibit E to Motion, Deposition of Chris Martinez. at 9: 1-10:10 (taken June 9, 2008) ("Martinez Depo.") The main reasons for the complaint and ensuing investigation were what appeared to be Chavez' initial failure to provide the requested doctor's note, an altered date on the "doctor's note," and a seeming inconsistencies in Chavez' story about when he had visited the doctor. Martinez Depo. at 11: 10-13: 12.

Martinez contends that Chavez did not provide the doctor's note to Casaus until more than three weeks after his return to work, and only after Casaus had requested the note several times. See Chavez Depo. at 72: 18-25. Chavez concedes that Casaus had asked at some point, but asserts that Casaus' supervisor, Major Robert Holguin told Chavez not to "worry about it," which Chavez took to mean that the doctor's note was no longer an issue. When Casaus requested the note again, Chavez provided it to him. See id. at 70: 6-72:7.

The note that Chavez finally provided to Casaus appeared to have been altered. See Chavez Depo. at 41: 17-42:8; Exhibit C to Motion, Doctor Appointment Verification)("Doctor's Note"). Casaus requested an Internal Affairs Investigation into the issues of insubordination, untruthfulness, and conduct unbecoming an officer by Chavez with respect to the requested sick leave. See Martinez Depo. at 8: 20-12: 19; id. at 10: 1-22; id. at 12: 7-19.

Martinez contends that, as a sworn officer of the New Mexico State Police, Chavez is aware that the Department has the right to conduct Internal Affairs Investigations; that he must cooperate with them; and that the Department could verify any statements or documents that he gave them. See Chavez Depo. at 15: 4-22; id. at 16: 15-19; id. at 17: 4-7. Chavez disputes these allegations and maintains that DPS regulations allow commanders to "require verification of a reported illness . . . from a physician." Exhibit D to Motion, Department of Public Safety Personnel Policy at 4 (dated May 4, 2000) ("Policy").

Martinez contends that he was conducting an authorized New Mexico State Police Internal Affairs investigation when he went to Dr. Roland Gerencer's office on June 6, 2007 to verify the dates on the "doctor's note" that Chavez provided to Casaus, because the dates appeared to have been altered. See Doctor's Note at 1; Martinez Depo. at 8: 20-9: 5; id. 10: 1-22; id. at 12: 7-19; id. at 14: 14-18. Chavez disputes Martinez' contention to the extent that Martinez maintains that he was conducting an "authorized" investigation. Chavez contends that whether Martinez' investigation was authorized by law is a central issue of law in this action and that Martinez made an erroneous legal conclusion.

Kelly Sommer is a receptionist at Dr. Gerencer's office, New Mexico Ear, Nose and Throat. See Exhibit F to Motion, Deposition of Kelly Sommer at 4: 10-14 (taken April 16, 2008)("Sommer Depo."). Veronica Molinar is a receptionist and transcriptionist at New Mexico Ear, Nose and

Throat. See Exhibit F to Motion, Deposition of Veronica Molinar at 6: 5-9 (taken April 16, 2008)("Molinar Depo."). Molinar was intimidated by Martinez when he entered her office and requested Chavez' medical information. See Molinar Depo. at 13:24-14:7. Molinar only gave the information to Martinez because he identified himself as a member of the New Mexico State Police. See id. at 16:23-17:8.

During the investigation, Martinez did not demand or ask to see Chavez' medical records as Chavez alleges in his Complaint. See Complaint ¶¶ 13, 14, at 2 (alleging that Martinez asked for and received medical records); Martinez Depo. at 25: 20-25 ("I didn't ask for the medical note because I didn't want medical records or the release, just the verification."); Sommer Depo. at 14: 4-19; Molinar Depo. at 13: 16-23. Dr. Gerencer's office did not disclose any documents to Martinez, as Chavez alleges in his Complaint. See Complaint ¶¶ 13-16, at 2; Plaintiff's Answers to Interrogatories No. 12 and Verification; Sommer Depo. at 14: 4-19; Molinar Depo. at 13: 16-23. Although Martinez did not receive any documents from Dr. Gerencer's office, he obtained confidential information that he did not have before he went to the doctor's office. See Deposition of Jimmy Salmon at 19: 17-20: 14 (taken June 3, 2008). That information included consultation dates and a date for a surgery performed on Chavez. See id.

Chavez asserts that, after Martinez received Chavez' medical information from Dr. Gerencer's office, Martinez concluded that Chavez had not altered the doctor's note. See Martinez Depo. at 20: 10-17. Martinez contends that, as a result of the Internal Affairs investigation, there was insufficient evidence to support the charge of untruthfulness, but the charges of insubordination and conduct unbecoming an officer were sustained. See Martinez Depo. at 210: 10-17; id. at 22: 14-16. While Chavez disputes these facts, he does so without providing competent evidence to contradict Martinez' evidence, and it appears that his primary contention is that the charges of

insubordination and conduct unbecoming an officer are irrelevant.

The United States Department of Health & Human Services performed an investigation and found that the disclosure of Chavez' medical information to Martinez "could reflect a violation of the general uses and disclosures provision at 45 C.F.R. § 164.502(a)." Exhibit 4 to Plaintiff's Response Motion for Summary Judgment, filed July 21, 2008 (Doc. 25)("Response"), Letter from the United States Department of Health and Human Services at 1(dated October 2, 2007) ("DHHS Letter"). Dr. Gerencer's office acknowledged that Martinez received information he should not have. See Exhibit 5 to Response, Plaintiff's Response to Defendant's Request for Production No. 2, at 1 (served April 2, 2008); Letter from New Mexico Ear Nose and Throat Specialists, at 1 (dated September 26, 2008)("NM ENT Letter").

Martinez had not gone to a medical office to verify a doctor's note before he went to Dr. Gerencer's office. See Exhibit 3 to Response, Deposition of Jimmy Salmon at 17:5-15 (taken June 9, 2008) ("Salmon Depo."). Major Jimmy Salmon, Chavez' supervisor during the relevant times, testified that Martinez' visit to Dr. Gerencer's office was the first time of which he knew that an internal affairs investigator went to a medical office to verify a doctor's note. Id.

**PROCEDURAL BACKGROUND**

Chavez commenced this action against Martinez under 42 U.S.C. § 1983. See Complaint ¶ 3, at 1. Chavez alleges that Martinez violated his Fourth and Fourteenth Amendment rights under the United States Constitution. See id. ¶¶ 18-23, at 2-3. Martinez moves the Court to grant summary judgment in his favor on qualified immunity grounds. See Defendant's Motion for Summary Judgment, at 1 (filed July 3, 2008)(Doc. 23).

**LAW REGARDING STANDARD FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT**

A party against whom a claim is asserted may, at any time, move with or without supporting affidavits for summary judgment in that party's favor as to all or any part of the claim. See Fed. R. Civ. P. 56. The purpose of summary judgment is to isolate, and then terminate, claims and defenses that lack factual support. See Celetex Corp. v. Catrett, 477 U.S. 317, 323-34 (1986).

In a motion for summary judgment, the moving party has the burden of persuasion, but the burden of going forward shifts during the motion process. The moving party must first make a prima facie showing that summary judgment is appropriate under rule 56. See Celetex Corp. v. Catrett, 477 U.S. at 323 (1986). The movant discharges this burden by pointing out to the court an absence of evidence in support of the non-moving party's claims.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (citations omitted). The burden of going forward then shifts to the non-moving party to demonstrate, by affidavit or otherwise, that a genuine issue of material fact remains for the finder of fact to resolve. See United States v. Simons, 139 F.3d 1386, 1388-89 (11th Cir. 1997). The court's role is narrowly limited to assessing the threshold issue whether a genuine issue of material fact exists, requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The court will test for a genuine issue of material fact through the prism of the applicable legal standard – the quantum and quality of proof necessary to support liability under the claims advanced. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary

standards that apply to the case. This is true at both the directed verdict and summary judgment stages."). "A genuine issue" exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. Id. A fact is "material" if it might affect the case's outcome. Id. Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. See id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, when considering a motion for summary judgment, a court will examine the facts and make all reasonable inferences in the light most favorable to the non-moving party. See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000).

In the United States Court of Appeals for the Tenth Circuit, summary judgment will lie if the movant establishes entitlement to judgment as a matter of law "given [the] uncontroverted operative facts." Thompson v. Wichita Coca-Cola, 968 F.2d 1022, 1024 (10th Cir. 1992).

**LAW REGARDING APPLICATION OF THE STANDARD FOR QUALIFIED IMMUNITY**

Qualified immunity protects federal and state officials from liability for discretionary functions and from "the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991). To balance the interests of the complaining individual, and the burden put upon the government official in defending such cases, "courts recognize the affirmative defense of qualified immunity, which protects 'all but the plainly incompetent or those who knowingly violate the law.'" Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity is judicially created and rooted in public policy. The fear of suit may have a chilling effect on official decision-making, seriously deterring officials from exercising

judgment with the decisiveness important to their office. See Richardson v. McKnight, 521 U.S. 399, 407 (1997)(describing the purposes of qualified immunity "as protecting government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.")(internal quotations omitted); Wyatt v. Cole, 504 U.S. 158, 165 (1992)(detailing the public policy basis for the qualified immunity privilege). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court of the United States stated:

> It cannot be disputed seriously that claims frequently run against the innocent as well as the guilty -- at a cost not only to the defendant officials, but to society as a whole. . . . [T]here is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.

Id. at 814. (internal citations and quotations omitted). To evaluate claims of qualified immunity, courts apply a two-part analysis.

**1. Two-Part Test for Qualified Immunity.**

The broad protection afforded by qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001)(quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)). When a defendant raises the affirmative defense of qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). The qualified immunity privilege is "'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Id. at 200-201 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Once a defendant asserts the affirmative defense of qualified immunity, the burden then shifts to the plaintiff to establish a violation of a constitutional or statutory right by the defendant. See Gross v. Pirtle, 245 F.3d at 1155; Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001), cert. denied, 534 U.S. 1019 (2001); Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000).

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . In the course of determining whether a constitutional right was violated on the premise alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

Saucier v. Katz, 533 U.S. at 201 (citations omitted).

Should a plaintiff meet his or her burden to first establish a violation of a constitutional right, he or she is then required to demonstrate that the right alleged to have been violated was clearly established at the time of the defendant's allegedly unlawful conduct. See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). Should the plaintiff fail to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity. See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d at 1535. "In short, although we will review the evidence in the light most favorable to the nonmoving party . . . the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)).

**2. Clearly Established Law.**

Qualified immunity shields federal officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818. A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Strepka v. Miller, 2001 WL 1475058 at * 5 (10th Cir. 2001)(citing Currier v. Doran, 242 F.3d at 923). See Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836 (10th Cir. 2005).

As the Supreme Court has observed, it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640. However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 635.

In the Tenth Circuit, to carry the burden of identifying a clearly established right, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Trotter v. Regents of

Univ. of N.M., 219 F.3d 1179, 1184 (10th Cir. 2000)(quoting Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990), abrogated on other grounds, Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991)). Moreover, that an official action may be in violation of an agency's internal procedures does not, in itself, violate any clearly established constitutional right. See Herring v. Keenan, 218 F.3d 1171, 1180-81 (10th Cir. 2000)(explaining "that the fact that an official discloses information in violation of his own internal procedures does not make the disclosure a violation of a clearly established constitutional right to privacy."), cert. denied, 534 U.S. 840 (2001); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)("In considering the 'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question.").

The plaintiff's burden to establish that the law is clearly established "must be undertaken in light of the case's specific context, not as a broad proposition." Saucier v. Katz, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 842 (internal citations and quotations omitted).

**THE LAW REGARDING ILLEGAL SEARCH AND SEIZURE OF MEDICAL RECORDS**

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government. See U.S. CONST. amend. IV. Thus, under the Fourth Amendment, government officials must normally obtain a warrant based upon probable cause from an impartial judicial official before seizing evidence. See Katz v. United States, 389 U.S. 347, 357 (1967). Regarding

the warrantless seizure of medical records by a government employer, the Tenth Circuit has stated that a Fourth Amendment violation might occur when a government employer seizes an employee's medical records without a warrant. See Lankford v. City of Hobart, 27 F.3d 477, 480 n. 2 (10th Cir. 1994). The Tenth Circuit in Lankford v. City of Hobart seemed to suggest that such a finding is possible without deciding the issue. See id. ("It is possible that a Fourth Amendment violation occurred when . . . [Defendant] 'seized' [Plaintiff's] medical files without a warrant. . . . [Plaintiff] has failed adequately to address the Fourth Amendment implications of [Defendant's] actions on appeal. Therefore, we do not address this issue.").

Instead of resting on Fourth Amendment grounds, Lankford v. City of Hobart is rooted in the right to privacy. In Lankford v. City of Hobart, female former dispatchers brought an action against a police chief under 42 U.S.C. § 1983. See id. at 478. Among other things, the plaintiffs alleged that the chief of police sexually harassed them and used his authority as police chief to obtain the private medical records of one of the plaintiffs to prove that she was a lesbian. See id. The Tenth Circuit held that, if true, the police chief's actions amounted to a clear *privacy* violation. See id. at 479 (emphasis added). In reaching its holding, the Tenth Circuit relied on Eastwood v. Department of Corrections of Oklahoma, 846 F.2d 627 (10th Cir. 1988). See Lankford v. City of Hobart, 27 F.3d at 479. Eastwood v. Department of Corrections of Oklahoma involved a state employee who coerced a subordinate to reveal private information about her sexual history. See Eastwood v. Department of Corrections of Oklahoma, 846 F.2d at 629. The Tenth Circuit held that the state employee did not enjoy qualified immunity from suit for violation of privacy arising out of those facts. See id. at 630. Thus, the cases that the parties cite do not provide direction on how to test a whether a Fourth Amendment violation occurred.

The Supreme Court has said that, generally, "[a] 'search' occurs when an expectation of

privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). See United States v. Lyons, 510 F.3d 1225, 1240 n. 9 (2007). "Determining whether a legitimate expectation of privacy exists involves two inquiries: (1) defendant must show a subjective expectation of privacy in the area searched, and (2) that expectation must be one that society is prepared to recognize as reasonable." United States v. Angevine, 281 F.3d 1130, 1134 (10th Cir. 2002).

Regarding whether a search is reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell v. Wolfish, 441 U.S. 520, 559 (1979)(citations omitted). Nonetheless, "the precedent of the Supreme Court and this [the Tenth] circuit is quite clear that a warrantless search is reasonable only when it falls within one of the clearly defined exceptions to the warrant requirement. See Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973)." United States v. Bute, 43 F.3d 531, 534-535 (10th Cir. 1994). Thus, a warrantless search is per se unreasonable unless it falls within one of the exceptions to the warrant requirement.

**THE RIGHT TO PRIVACY**

The Due Process Clause of the Fourteenth Amendment protects the right of privacy. See Flanagan v. Munger, 890 F.2d 1557, 1570 n. 15 (10th Cir. 1989); Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986). The Tenth Circuit has recognized that the right to privacy extends to when government employers improperly attempt to obtain the private medical history or records of their

employees. See Lankford v. City of Hobart, 27 F.3d at 479. Although the court in Lankford v. City of Hobart found a violation of the right of privacy under the facts in that case, the court did not discuss the manner in which a court should determine generally when a violation of the privacy right occurs. Flanagan v. Munger provides some instruction on this point. In Flanagan v. Munger, the Tenth Circuit employed a balancing test to determine when disclosure by the government of private information amounts to violation of the right to privacy. See Flanagan v. Munger, 890 F.2d at 1570. Specifically, a court must evaluate: "(1) [i]f the party asserting the right has a legitimate expectation of privacy,[1] (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." Id. (citations omitted).

On the facts of Flanagan v. Munger, the Tenth Circuit held that the plaintiffs did not suffer a violation of their privacy rights. In Flanagan v. Munger, a group of police officers faced reprimand because of their co-ownership of an adult video store. See Flanagan v. Munger, 890 F.2d at 1560. After an internal affairs investigation, the chief of police officially reprimanded the officers, and announced that reprimand and the reasons for it to the media. See id. at 1570. Tenth Circuit found that the plaintiffs did not have a reasonable expectation of confidentiality in the reasons for their reprimand – ownership of an adult video store – because their proprietorship was public information. See id. ("The plaintiffs often worked in the store themselves renting videos to the public. They were even observed telling some customers that they were police officers. Thus, the plaintiffs could have no expectation that their ownership of the video store would be kept

---

[1] It is unclear whether a legitimate expectation of privacy in the context of Flanagan v. Munger's balancing test is the same or analytically similar to the "legitimate expectation of privacy" that is discussed in the Fourth Amendment context. See U.S. v. Angevine, 281 F.3d at 1134. The fact that the language is identical in both contexts suggests that the approach might be the same or similar. The cases discussing reasonable expectations of privacy in the context of privacy violations at least provide guidance for the Fourth Amendment situations.

private."). Moreover, the Tenth Circuit stated that "the reprimands were issued because the off-duty conduct was believed to reflect on the officers fitness as officers and to undermine public confidence in the department. Thus, the fact that the reprimands were issued related simply to the officers work as police officers." Id. (citations omitted). The court noted that "only highly personalized information is protected." Id. In a similar case, the Tenth Circuit has also stated the following regarding the expectation of privacy in information being disclosed: "The legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material. . . ." Mangels v. Pena, 789 F.2d at 839.

The Tenth Circuit case most analogous to this case is Ortlieb v. Howery, 74 Fed. Appx. 853, 2003 WL 22025507 (10th Cir. 2003). Although Ortlieb v. Howery is an unpublished opinion, it offers useful guidance. In Ortlieb v. Howery, a plaintiff brought an invasion-of-privacy action pursuant to 42 U.S.C. § 1983. See id. at 854, 2003 WL 22025507 * 1. The plaintiff, a hospital employee, had sustained a leg injury, and received treatment, including an X-ray, at the hospital where she was employed. See id., 2003 WL 22025507 * 1. The plaintiff later contacted her supervisor and sought extended medical leave because of the severity of her injuries. In support of her request for leave, the plaintiff provided a surgeon's "Statement of Disability." Id. at 855, 2003 WL 22025507 * 2. In the process of evaluating the plaintiff's request, her supervisor obtained and viewed an x-ray of plaintiff's leg without permission. See id., 2003 WL 22025507 * 2. Ultimately, the supervisor determined that the plaintiff's injuries were too severe for her to recover to the extent that she could perform her duties and terminated her employment. Id., 2003 WL 22025507 * 2. On those facts, the Tenth Circuit applied the balancing test set forth in Flanagan and held that the Plaintiff did not have a reasonable expectation of confidentiality in the X-ray. See id. at 857, 2003 WL 22025507 * 4 .

In reaching its conclusion, the Tenth Circuit in Ortlieb v. Howery noted that the plaintiff's broken leg was not confidential information because the injury was "well-known and publicized with no intrusion into her personal affairs." Id. The Tenth Circuit also observed that, because the plaintiff had "supported her request for an indefinite extension of medical benefits with her doctor's report stating that his opinion of continuing disability was corroborated with her x-rays, she had no reasonable expectation that the x-rays themselves would be confidential or protected from her supervisor's reach or purview." Id., 2003 WL 22025507 * 4. Finally, the Tenth Circuit noted that "the x-rays, unlike written medical records, contained no facts or information of an intimate or personal nature about which Ms. Ortlieb could form a legitimate or reasonable expectation of confidentiality notwithstanding her claim for benefits." Id., 2003 WL 22025507 * 4.

## ANALYSIS

When a defendant raises the defense of qualified immunity, the burden shifts to the Plaintiff to demonstrate that the defendant violated the plaintiff's constitutional rights. See Gross v. Pirtle, 245 F.3d at 115. Chavez has not met that burden because he cannot show that Martinez violated his Fourth Amendment right to be free from unreasonable search and seizure or his Fourteenth Amendment right to privacy. Therefore, Martinez is entitled to qualified immunity.

### I. CHAVEZ HAS NOT ESTABLISHED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER MARTINEZ VIOLATED HIS FOURTH AMENDMENT RIGHTS.

In evaluating an alleged violation of the Fourth Amendment, the Court must first decide whether a search occurred. If a search occurred, the Court must determine whether that search was reasonable. The Court finds that the Defendant did not conduct a search as that term is understood in the context of the Fourth Amendment. Accordingly, the Court need not decide Martinez' alternative argument that, if the Court finds that Martinez' activities constituted a search, such a

search would have been reasonable and thus not violative of the Fourth Amendment.[2]

The Court does not believe that a police officer asking a third-party questions and receiving voluntary answers is a search under the Fourth Amendment. To hold otherwise would make almost all routine police work and investigation subject to the Fourth Amendment's limitations. The Court does not believe that police questioning and voluntary responses constitute a search to which the Fourth Amendment applies.

Martinez' questions and receipt of answers in this specific context do not constitute a search. To constitute a search, Martinez' actions must have at least invaded upon Chavez' reasonable expectations of privacy. See United States v. Jacobsen, 466 U.S. at 113. The information that Martinez sought and obtained was information that Chavez purported to supply in his request for sick leave. Specifically, Chavez provided a doctor's note containing the information that Martinez attempted to verify at Dr. Gerencer's office. Thus, Chavez cannot, on good ground, argue that he had a reasonable expectation of privacy in the fact that he was undergoing a medical procedure and in the dates upon which he was taking days off work to visit the doctor.

In addition, as an employee of New Mexico State Police Department, Chavez is subject to the State Police Leave Policy. See Policy at 4. The policy states: "Commanders may require verification of any reported illness or injury from a physician, or other qualified health care provider." Id. Whether the policy explicitly authorizes commanders to visit the doctor's office to verify a reported illness or days needed off because of that illness is immaterial. An employee, by

[2] The Court should avoid making constitutional rulings that are unnecessary to dispose of the case or claim. See Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dept. of Labor, 187 F.3d 1174, 1180 n. 1 (10th Cir.1999)(noting the "'fundamental and longstanding principle of judicial restraint'" which requires that we "'avoid reaching constitutional questions in advance of the necessity of deciding them'")(quoting Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988)).

submitting to the sick-leave policy, in effect agrees that commanders are privy to at least certain information regarding illnesses that he reports and upon which he wishes to base his sick leave request. To maintain otherwise would in effect hold that commanders are constitutionally barred from enforcing the rules of their sick leave policy. The New Mexico State Police, as do other employers, have a right to take reasonable measures to ensure that their sick leave policy is not subject to abuse.

The Court recognizes that the receptionists at Dr. Gerencer's office may have violated internal privacy policies as well as policies that the Department of Health and Human Services imposes. See DHHS Letter at 1; NM ENT Letter at 1. Possible violation of those policies by Dr. Gerencer's office, however, does not give rise to a finding that Martinez violated the Fourth Amendment in asking for a very limited amount of information. The Court finds that Martinez did not violate Chavez' reasonable expectations of privacy. Thus, no search or seizure occurred for purposes of the Fourth Amendment.

Martinez contends that, even if a search had occurred, the search was reasonable. Generally, a warrantless search is per se unreasonable unless an exception to the warrant requirement applies. See United States v. Bute, 43 F.3d at 534-535. The Court need not decide whether Martinez' search, if it had been a search, was reasonable. It is sufficient for the Court to conclude that Martinez' limited questioning and receipt of information meant to validate what Chavez had already purported to provide is not a search that the Fourth Amendment prohibits.

Thus, Chavez has not demonstrated that he has suffered a violation of his Fourth Amendment right to be free from an unreasonable search.

## II. CHAVEZ HAS FAILED TO SHOW THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER MARTINEZ VIOLATED HIS RIGHT TO PRIVACY.

The Court will apply the test set forth in Flanagan v. Munger to determine whether Martinez violated Chavez' right to privacy. The Court therefore must evaluate whether: "(1) the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." 890 F.2d at 1570. The Court concludes that, under that standard and the case law applying it, Chavez has not shown that he suffered a violation of his right to privacy.

The Court is aware that the test in Flanagan v. Munger is directed more toward situations where government actors reveal or publicize information that a plaintiff considers private or confidential. Even so, the Tenth Circuit has applied the test where a plaintiff asserted a violation of her right to privacy when her employer accessed her medical information without permission. See Ortlieb v. Howery, 74 Fed. Appx. 853, 2003 WL 22025507. In doing so, the Tenth Circuit used a modified version of the test that examined the first two prongs. In Ortlieb v. Howery, the Tenth Circuit reached only the first prong of the test, finding it unnecessary to reach the second prong of the test and decide whether the alleged intrusion served a compelling interest. See id. at 856-57, 2003 WL 22025507 * 3.

Chavez' expectation of privacy in the excused dates that Martinez sought to verify, or in the fact that Chavez was going to undergo a procedure, is not compelling. Chavez attempted to provide that same information in the form of a doctor's note when requesting sick leave. Chavez cannot reasonably assert a privacy interest in information that he himself provided. Because Chavez cannot reasonably maintain that he had a legitimate expectation of privacy in the information that Martinez obtained, he cannot maintain a violation of his right to privacy.

This case is similar to Ortlieb v. Howery. Like the plaintiff in that case, Chavez sought time off from work on the basis of a doctor's note. Specifically, in Ortlieb v. Howery, the plaintiff sought extended leave and provided a surgeon's "statement of disability," which relied partly on an X-ray to support the plaintiff's need for leave. See Ortlieb v. Howery, 74 Fed. Appx. at 857, 2003 WL 22025507 * 3. The Tenth Circuit noted that because the plaintiff "supported her request for an indefinite extension of medical benefits with her doctor's report stating that his opinion of continuing disability was corroborated with her X-rays, she had no reasonable expectation that the x-rays themselves would be confidential or protected from her supervisor's reach or purview." Id., 2003 WL 22025507 * 3. Similarly, Chavez cannot reasonably first rely on certain medical information to seek sick-leave and subsequently contend that such information is private.

Moreover, the Tenth Circuit observed in Ortlieb v. Howery that the medical information in question – an X-ray – did not contain highly personal information – a fact weighing against a finding that it was private. See id. Again, this case is analogous in that Martinez obtained dates and the generalized fact that Chavez was scheduled to undergo a procedure. Besides the fact that such information was supposedly already made known to the State Police, the information is not highly personal.

Chavez relies on Lankford v. City of Hobart, which found a clearly established violation of constitutional rights when an employer obtained a plaintiff's medical records without permission. See Lankford v. City of Hobart, 27 F.3d at 479.[3] Lankford v. City of Hobart, however, is distinguishable, because it involved a supervisor obtaining highly private information – actual medical records – for an illegitimate purpose. The defendant in Lankford v. City of Hobart was

[3] Chavez presents Lankford as a Fourth Amendment case. It is, however, grounded in the right to privacy. The Court will treat it accordingly.

attempting to verify an assertion that the plaintiff was a lesbian. See id. at 479. Such a situation is not comparable to the one where a supervisor, following a written policy, asks for some dates to verify that a proffered medical justification for taking sick leave is truthful. Lankford v. City of Hobart is, therefore, inapposite.

With regard to the second prong – whether the alleged intrusion served a compelling interest – the cases provide little guidance, because they do not reach the second prong of the analysis. Martinez did not ask for, nor did he obtain, any information that Chavez was attempting to keep private. Rather, Martinez merely asked the receptionists at Dr. Gerencer's office to verify the excused dates on the doctor's note that Chavez provided. See Sommer Depo., at 14: 1-20: 25; Molinar Depo., at 20: 1-19. There is no indication that Martinez cared about or attempted to obtain any other information aside from the date pertinent to Chavez' request for sick leave. Given that the intrusion was so slight, and that Martinez did not intrude upon any reasonable expectation of privacy, the Court need not decide whether there was a compelling interest.

The Court concludes that no violation of Chavez' right to privacy occurred. Because Chavez cannot show a violation of any clearly established constitutional rights arising out of the Defendant's action, the Defendant is entitled to qualified immunity. Because the defendant is entitled to qualified immunity, which is immunity from suit, the Court will grant the Defendant's motion for summary judgment.

**IT IS ORDERED** that Lt. Chris Martinez' Motion for Summary Judgment is granted.

UNITED STATES DISTRICT JUDGE

Counsel:

Sam Bregman
Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

W. Ann Maggiore
Butt Thornton & Baehr PC
Albuquerque, New Mexico

*Attorneys for the Defendant*